IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| LISA MARIE COOPER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant, | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 25-1653 |

<u>MEMORANDUM OPINION</u>

## I. INTRODUCTION

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Lisa Marie Cooper ("plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff contends the Administrative Law Judge ("ALJ") erred in failing to adequately explain why, after finding a medical opinion partially persuasive, she did not incorporate the more restrictive limitations in that opinion into the residual functional capability ("RFC"), when she seemingly accepted them. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence and should be reversed or, alternatively, remanded for further administrative proceedings. The Commissioner asserts that the ALJ's decision is supported by substantial evidence and the Commissioner's decision should be affirmed.

Plaintiff filed a motion for summary judgment (ECF No. 9) which was denied as moot because the Federal Rules of Civil Procedure Supplemental Rules for Social Security do not

contemplate that kind of motion.[1]    Plaintiff filed a brief (ECF No. 10), which is the appropriate

means to seek relief. Fed. R. Civ. P. SUPP SS 6.    The Commissioner filed a brief in opposition

to plaintiff's motion for summary judgment asserting that the ALJ's decision should be affirmed.

(ECF No. 12.)    Plaintiff filed a reply brief. (ECF No. 13).    For the reasons set forth below the

court will affirm the decision of the Commissioner.


## II.    PROCEDURAL HISTORY

Plaintiff filed a previous application for disability insurance benefits ("DIB") in

September 2013, which was denied at the initial level, with no appeals filed. (R. at 223.)

On March 6, 2023, plaintiff protectively filed a Title I application for DIB beginning June

3, 2022, which is at issue before the court. (R. at 17.)    The claim was initially denied on June 26,

2023, and again upon reconsideration on November 29, 2023. (Id.)    On January 16, 2024,

plaintiff requested a hearing. (Id.)    On August 28, 2024, the ALJ commenced a telephonic

hearing where she advised plaintiff about her right to have representation by an attorney, and

provided plaintiff with the opportunity to reschedule the hearing for a later date.    Plaintiff

advised that she wanted to engage the services of an attorney for her claim. (R. at 63-78.)    The

rescheduled hearing was conducted on January 15, 2025, by video conference before the ALJ.

---

1. The committee notes accompanying the Federal Rules of Civil Procedure Supplemental Rules for Social Security explain: "Rule 5 states the procedure for presenting for decision on the merits a § 405(g) review action that is governed by the Supplemental Rules. Like an appeal, the briefs present the action for decision on the merits. **This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record**. Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Fed. R. Civ. P. SUPP SS 6 (emphasis added).

(R. at 32-62.)   Plaintiff agreed to appear by video and testified at the hearing. (R. at 17, 34.) Plaintiff was represented by an attorney at the hearing. (Id.)   An impartial VE also testified at the hearing. (Id.)

In a decision dated February 24, 2025, the ALJ determined that plaintiff was not disabled within the meaning of the SSA under §§ 216(i) and 223(d) and was able to return to her past relevant work, or alternatively, there were sufficient other jobs in the national economy plaintiff was capable of performing. (R. at 25, 27.)   Plaintiff timely requested a review of that determination, and by letter dated August 27, 2025, the Appeals Council denied the request for review and the decision of the ALJ became the final decision of the Commissioner. (R. at 1-5.) Plaintiff subsequently commenced the present action seeking judicial review.

III.    **PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE**

A.    **Background**

Plaintiff was born on June 22, 1979, and was 42 years old, a "younger individual," at the time of her disability onset date. (R. at 25.)   She has a high school education. (R. at 42.) Plaintiff lives with her mother. (R. at 41.)   She is capable of assisting with household chores, such as vacuuming, doing dishes, dusting, and laundry, and she can do her own grocery shopping as long as she can lean on the cart, and prepare light meals. (R. at 50-51, 262.)

Plaintiff previously worked as an office manager for a plasma donation center and as a phlebotomist. (R. at 44, 234.)   The ALJ determined plaintiff had "not engaged in substantial gainful activity" since her application date for benefits, June 3, 2022. (R. at 19.)   During the hearing the ALJ heard testimony from plaintiff regarding her limitations, predominantly focusing

3

on her back pain, restless leg syndrome, and "tingling" in her hands and feet. (R. at 46-53.)

Plaintiff reported frustration in her ability to hold a job because "it just got to be too much on

[her] back." (R. at 46.)   Plaintiff discussed that she has stress and anxiety over not working and

that she "can't do the stuff [she] used to do." (R. at 54.)

Plaintiff is licensed to drive, but does not do so often. (R. at 42, 427.)   During a typical

day plaintiff listens to the radio, reads, plays video games on her phone, watches television

shows, and walks around a little, but "can't do things for very long." (R. at 23, 51, 427.)

Plaintiff's reported medication list includes: buspirone, duloxetine, levothyroxine, naproxen,

omeprazole, and ropinirole. (R. at 271.)

**B.      Medical Record**

**1.      Nurse Practitioner Melissa Walls**

On June 20, 2023, plaintiff was seen and evaluated by Melissa Walls, N.P., ("NP

Walls"), for a consultative orthopedic evaluation for the Benefit Disability Determination

("BDD") office's use in making a determination of disability. (R. at 426-440.)   Following her

one-time evaluation, NP Walls completed a medical source statement. (R. at 430-438.)   She

noted plaintiff's physical history as plaintiff reported it to her. (R. at 426.)   From her

examination, NP Walls reported plaintiff to be "in no acute distress." (R. at 428.)   She noted

plaintiff

> did not need assistance changing for the exam. Needs no help getting on and
> off exam table. Able to rise from chair without difficulty. …
> Hand and finger dexterity are intact. Grip strength 100% full bilaterally. The
> claimant was able to use both hands to zip, button, tie, pinch, grasp, and
> manipulate objects …
> [For both upper and lower extremities] Strength 5/5 in proximal and distal
> muscles. No muscle atrophy.

(Id.)  NP Walls found plaintiff's prognosis to be "fair to good" and noted plaintiff had lessened back pain since her surgery. (R. at 429.)

In the medical source statement NP Walls supplied following her examination of plaintiff, she indicated in the check-boxes that plaintiff could continuously lift and carry up to 20 pounds, frequently up to 50 pounds, and occasionally up to 100 pounds. (R. at 430.)  She opined that plaintiff could sit up to 8 hours in an 8-hour workday and could stand or walk for up to 2 hours without interruption, and up to 4 hours of an 8-hour workday. (R. at 431.)  At the time of this evaluation, NP Walls found plaintiff could perform frequent overhead reaching and continuous handling, fingering or other reaching, pushing or pulling of objects. (R. at 432.)  She posited plaintiff could continuously climb stairs and ramps, frequently climb ladders or scaffolds, and continuously balance, stoop, kneel, crouch, or crawl. (R. at 433.)  She noted no exposure limitations. (R. at 434.)

### 2. State Agency Medical Consultants

Plaintiff's medical record file was reviewed by state agency medical consultants for independent disability determination analysis and residual functional capability ("RFC") to work. (R. at 79-97.)  Esther Marie Kim, M.D., on June 23, 2023, noted findings about plaintiff's medical conditions. (R. at 79-85.)  On reconsideration, John David Gavazzi, Psy.D., on November 29, 2023, assessed plaintiff's mental health record, and Alfonso Cuozzo, M.D., reviewed other medical conditions on November 22, 2023. (R. at 87-97.)

At the initial level, there was no mental health professional review because there were "no [mental residual functional capabilities] associated with this claim." (R. at 84.)  The mental health reviewer of the file determined that plaintiff had no limitations in the paragraph "B"

5

criteria of the listings in a) interact with others; b) concentrate, persist, or maintain pace; c) adapt or manage oneself; or d) understand, remember, or apply information, despite "a history of anxiety disorder. (R. at 92.)   He noted, "[t]he preponderance of the MER does not support moderate limitations in social skills, memory skills, CPP capacities, or adaptability due to mental impairments." (Id.)

The medical health reviewers at both the initial determination and upon reconsideration found plaintiff had "severe" disorders of the skeletal spine, and on reconsideration, also added a "severe" finding of "osteoarthrosis and allied disorders" of the musculoskeletal system.   (R. at 81, 91.)   Due to plaintiff's age, education, and RFC, each medical health reviewer recommended a finding of "not disabled" because plaintiff can adjust to "[a]ll past work," as well as other jobs. (R. at 85, 95-96.)   Both reviewers recommended plaintiff was capable of "light" exertional work with exertional limitations. (Id.)   The initial level review found plaintiff's limitations limited her to unskilled work, but upon reconsideration this restriction was not found. (Id.)

## IV.    LEGAL STANDARD OF REVIEW

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g).   The judicial review of a final decision is plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).   With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner.   "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v.

6

Perales, 402 U.S. 389 (1971)).   The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d Cir. 2002) (quoting Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs., 48 F.3d 114, 117 (3d Cir.1995)).   This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).   The Third Circuit Court of Appeals had held that an administrative law judge has a legitimate basis to discredit a medical opinion when there are inconsistencies and contradictory evidence in the record. See Hubert v. Comm'r of Soc. Sec., 746 F. App'x 151, 153 (3d Cir. 2018).

## V.    DISCUSSION

### A.    Administrative Law Judge's Findings

Disability is defined under Title II of the SSA as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when his physical or mental impairment or impairments are of such severity that he is not only unable to do "his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

7

Proceeding through the sequential evaluation process, the ALJ determined at step one that plaintiff had not engaged in substantial activity since her claimed disability date (R. at 19); at step two acknowledged plaintiff had severe impairments of degenerative disc disease and spinal stenosis (R. at 20); and at step three found that plaintiff's combination of impairments did not meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id.)   Plaintiff exhibited other non-severe limitations, but none that rose to the level of serious or extreme as required to satisfy the "paragraph B" criteria. (R. at 21.)

At step four, "[t]he claimant bears the burden of demonstrating an inability to return to her past relevant work."   Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (citing Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir.1994)).

> In the first four steps [of the sequential analysis] the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)).

Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).   Other than the challenges raised here, plaintiff, in her brief, failed to explain how her prior work could not be performed with the limitation to light work.

Prior to commencing step four, the ALJ determined plaintiff's RFC.   The ALJ considered plaintiff's entire medical record, to include the medical opinions and state administrative medical reviewers' reports discussed above, and determined plaintiff's RFC as follows:

> [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is capable of occasionally climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs;

occasionally kneeling, crouching, and crawling; and frequently balancing and stooping.

(R. at 22.)   At step four, the ALJ determined that plaintiff had past relevant work as an office manager. (R. at 25.)

> The claimant's residual functional capacity does not preclude performance of the claimant's past relevant work. The claimant is capable of light work with postural limitations as set forth in the above residual functional capacity assessment. The vocational expert testified that the claimant can perform her past relevant work with her residual functional capacity limitations. (Hearing Transcript, 00:35:00 – 00:35:45). Accordingly, the claimant is **able to perform her past relevant work** as actually or generally performed.

(Id.) (emphasis added).   Because the ALJ determined plaintiff was not disabled, as defined in sections 216(i) and 223(d) the SSA, the sequential evaluation could have concluded at step four.

The ALJ, however, noted that if step five was considered,

> there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, and residual functional capacity (20 CFR 404.1569 and 404.1569a).

(Id.)   The ALJ's conclusion was based upon a series of hypothetical questions posited to the VE to determine whether there was work an individual with an RFC like plaintiff was capable of performing with the physical limitations noted in the RFC findings. (R. at 56-61.)   In certain of the hypothetical questions, the ALJ even added a further limitation – sedentary work.   The VE, when presented with the hypothetical scenario limiting the hypothetical person to sedentary work, stated that even if limited to the sedentary exertional level, the hypothetical individual would be able to perform the past work as an office manager as generally performed. (R. at 58.) Even with additional mental health limitations, and utilizing plaintiff's data as a younger individual, with at least a high school degree, vocational history, RFC and, based on her earlier

9

testimony at the hearing, the VE opined that there were a significant number of jobs available in the national economy that a hypothetical individual would be capable of performing, i.e. a mail clerk with 12,000 jobs, a small product assembler with 20,000 jobs, and a marker with 15,000 jobs. (R. at 57-58.)[2]

**B.      Alleged Error - Failing to Adequately Explain Why the More Restrictive Limitations of NP Walls' Opinion Were Not Incorporated into Plaintiff's RFC**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Plaintiff's appeal of denial of DIB focuses solely on whether the ALJ erred when she "found NP Walls' opinion partially persuasive, but then failed to reconcile the RFC with the more restrictive limitations contained therein, which she seemingly accepted, or explain why she did not." (Pl.'s Br., ECF No. 10 at 8.)   Specifically, plaintiff argues that the ALJ rejected only the portion of NP Walls' opinion related to limitations for "reaching and noise, stating that the other portions of the opinion were supported by the examination." (Id. at 9.)   Plaintiff contends that by failing to "explicitly reject" the portion of Walls' opinion that found plaintiff could "stand and walk 1-2 hours at a time for a total of 3-4 hours each" was harmful error, as these limitations would impact plaintiff's ability to perform both past relevant work, or perform other jobs identified by the VE. (Id. at 9-10.)   In essence, plaintiff is arguing those limitations would permit only

---

2. In a fourth hypothetical, the ALJ asked the VE whether sedentary jobs with limitations greater than those listed in plaintiff's RFC were available. The VE identified a document preparer with 14,000 jobs in the U.S. economy, a credit checker with 10,000 jobs, or a ticket checker with 8,500 jobs. (R. at 58-59.)   These are the jobs listed in the ALJ's decision as representative of other work an individual like plaintiff could perform. (R. at 26.)

sedentary work[3] – not light work,[4] which was included in the ALJ's determination of plaintiff's RFC.[5]

While the ALJ must develop the record and explain "how evidence in the record is treated. … The burden still 'lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition.'" Durden v. Colvin, 191 F. Supp. 3d 429, 449-50 (M.D. Pa. 2016) (quoting Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004)). In Rutherford, 399 F.3d at 554, the court recognized that only "credibly established limitations" must be included in a residual functional capability determination. Notably, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved for the Commissioner." Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 447 (2025 ed., Thomson Reuters, 2025) (quoting Winn v. Comm'r Soc. Sec. Admin., 894 F.3d 982, 987 (8th Cir. 2018)).

---

3. "*Sedentary work.* The regulations define sedentary work involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles …. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. … [P]eriods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10.

4. "*Light work.* The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. … the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Id.

5. Plaintiff's appeal does not contest the opinion of the ALJ relative to the findings for any other previously claimed physical limitation or any mental health limitation; accordingly, plaintiff's other impairments will not be addressed in this opinion. See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived").

11

> **The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability**," [and a]n ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.

Densberger v. Saul, No. 1:20-CV-772, 2021 WL 1172982 at *7-8 (M.D. Pa. Mar. 29, 2021) (quoting 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)) (emphasis added).   The ALJ considered and addressed the supportability and consistency of NP Walls' opinion.   She explained why the opinion of NP Walls was considered, but found to be partially persuasive. (R. at 24.)   In commenting on NP Walls' opinion, the ALJ stated,

> NP Walls opines the claimant is capable of lifting and carrying 100 pounds occasionally and 50 pounds frequently with **reduced standing and walking to 3 – 4 hours in an 8- hour workday**; no assistive device; frequent overhead reaching bilaterally; no postural limitations except frequent climbing ladders or scaffolds; and no exposure to loud noise. (Exhibit 7F/7 – 12). NP Walls' examination findings support the opinions except for reaching and noise limitations. Consultative examination findings are unremarkable except for decreased lumbar range of motion. (Exhibit 7F). The claimant's activities of daily living are functional. The claimant is able to drive, complete household chores, and shower, bathe, and dress herself. (Exhibit 7F/4). **Other records are consistent with light work.** A physical examination on May 18, 2023 disclosed paraspinal tenderness; decreased range of motion with pain; 5/5 all groups bilaterally; no postural motor deficits noted; normal lumbar paraspinal strength; sensation to light touch intact and equal bilaterally; normal reflexes; antalgic gait; 5/5 strength with toe walking and heel walking; negative straight leg raising bilaterally; pain in the lower lumbar portion of the back and bilateral buttock areas. (Exhibit 6F/3 – 4). **Thus, the opinion is partially persuasive**.

(Id.) (emphasis added).   Read in context, the ALJ stated that NP Walls' examination findings, except for the reaching and noise limitations, supported her opinion, but "other records are consistent with light work." (Id.)   The opinion was only partially persuasive; plaintiff was capable of light work and was not limited to sedentary work as NP Walls would have limited plaintiff.

12

The ALJ noted at the initial level review, and upon reconsideration, the state agency medical consultants determined plaintiff was able to work at the light exertional level, occasionally lifting or carrying 20 pounds and frequently lifting or carrying 10 pounds, with plaintiff being able to "stand and/or walk (with normal breaks) **for a total of**: **about 6 hours in an 8 hour workday**" and could "frequently" perform all postural limitations except for climbing ropes/ladders/scaffolds. (R. at 82-83, 93) (emphasis added).   Plaintiff contends NP Walls found greater standing/walking limitations, as compared to the 6-hour standing/walking limitations found by the state agency medical examiners, and those additional limitations were required to be noted in plaintiff's RFC. (Pl.'s Br., ECF No. 10 at 8.)   Implied is that plaintiff believes NP Walls' finding limited plaintiff to 3-4 hours of standing or walking **total** in an 8-hour workday, which would limit plaintiff to "sedentary" work, rather than "light" work as determined by the ALJ.   The ALJ also considered the state agency consultants' opinions and concluded that plaintiff's record as a whole supported the ability to perform "light" work.

The ALJ found persuasive some portions of NP Walls' opinion and some portions of the state agency consultants' opinions and determined what work-related functions were supported by the record as a whole. See Zappala v. Barnhart, 192 F. App'x 174, 177 (3d Cir. 2006) ("[T]he possibility that two inconsistent conclusions may be drawn from the evidence contained in the administrative record does not prevent an agency's finding from being supported by substantial evidence.").   As the ALJ noted in her decision: "A claimant's residual functional capacity must represent the most, not the least, work-related activities that they are capable of doing on a regular and continuing basis despite their impairments and limitations. (20 CFR 404.1545 and Social Security Ruling 96-8p)." (Id.)   The ALJ concluded the record supported the ALJ's RFC

determination. (Id.)   With respect to light work, the ALJ determined the assessments from the reviewing medical professionals were more appropriate findings for plaintiff's abilities because they reviewed longitudinal evidence of plaintiff's medical record. (R. at 25.)

The ALJ independently determined that the totality of plaintiff's record supports light work, as opined by the state agency medical examiners, with some postural limitations greater than those proposed by either the state agency examiners **or** NP Walls. (compare R. at 22, with R. at 83, 93, and R. at 433.)   The ALJ did not just rubber-stamp any medical source opinion. The RFC that the ALJ determined for plaintiff ultimately included postural limitations for "occasionally" climbing (all items), kneeling, crouching and crawling, and "frequently" balancing and stooping. (R. at 22.)

This court needs to consider whether the ALJ's decision is supported by substantial evidence.

> A judge may consider many factors yet base a decision on just one or two. And those one or two are the "reasons upon which [the denial of benefits] is based." 42 U.S.C. § 405(b)(1). The statute requires administrative judges to explain only the dispositive reasons for their decisions, not everything else that they considered.
>                                      …
> Administrative judges must always discuss the two most important factors: supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). But if opposing medical opinions are equally well-supported and consistent, then supportability and consistency are not dispositive. … So under the regulation, administrative judges must always explain the reasons for their decisions. But that does not mean always explaining all the factors.

Zaborowski v. Comm'r of Soc. Sec., 115 F.4th 637, 639 (3d Cir. 2024).   Here, the ALJ fully evaluated NP Walls' opinion, as well as the opinions of the state medical examiners, and found each of those opinions was partially persuasive.

14

There is substantial evidence to support the weight given by the ALJ to each of the medical opinions and she sufficiently explained the reasons for her conclusions.   The ALJ also sufficiently explained the reasons, based on the totality of plaintiff's record, for her conclusions in the development of plaintiff's RFC and the work-related limitations she found.   The RFC that the ALJ determined for plaintiff included numerous functional limitations to account for her severe and non-severe physical impairments. (See R. at 20, 22.)   The ALJ presented hypotheticals to the VE based on those findings.   The VE's identification of jobs a hypothetical person with an RFC like plaintiff would be able to perform that exist in significant numbers in the national economy took those limitations into consideration.   The ALJ explained the RFC and the reasons for accepting the testimony of the VE "based on the vocational expert's experience, education, and the publications in the different rehabilitation medicine and sources." (R. at 26.) While plaintiff, or this court, may view the situation differently, there is substantial evidence to support the RFC developed by the ALJ and the ALJ's decision.

## VI.    CONCLUSION

The ALJ explained why she developed the RFC that she did, with multiple limitations included for less than the full range of work available at the light exertional level, taking into account all plaintiff's severe and non-severe impairments.   At step four of the sequential evaluation, the ALJ determined plaintiff could perform her past relevant work.   The ALJ also considered the fifth step of the sequential evaluation, and after presenting hypotheticals to the VE, which included the limitations in the RFC, found plaintiff could perform a significant number of other jobs that exist in the national economy for an individual with those limitations.

The ALJ sufficiently explained her reasons for developing the RFC, her presentation of the RFC to the VE in hypotheticals, and her acceptance of the VE's findings of available jobs that plaintiff could perform.

Having considered the parties' submissions, the record as a whole and the applicable law, the court finds there is substantial evidence in the record to affirm the ALJ's decision.   The court will affirm the decision of the Commissioner.

An appropriate order and judgment will be entered.


Dated: July 14, 2026

BY THE COURT:


    s/Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge